**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Joseph M. DOWNEY, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 7, 2011.

Filed Feb. 21, 2012.

Erin N.B. Bruno, West Chester, for appellant.

Nicholas J. Casenta, Jr., Assistant District Attorney, West Chester, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J.E., BOWES, and OLSON, JJ.

OPINION BY BOWES, J.:

Joseph M. Downey appeals from the August 13, 2010 judgment of sentence of fines and costs imposed after he was convicted of the summary offense of underage drinking. We affirm.

Following his conviction of the offense in question by the magisterial district justice, Appellant filed an appeal with the Court of Common Pleas of Chester County. His *de novo* trial was held on August 10, 2010. West Chester University Police Officer Matthew J. Paris, who had participated in approximately 1500 prior incidents involving underage drinking, was the sole witness at the proceeding and testified as follows. At 10:00 p.m. on March 17, 2010, he was on patrol in full uniform with West Chester University Police Sergeant Herzog [1] on the sidewalk next to the Sharpless Street Garage in West Chester. The officers "heard loud screaming coming from the second floor of the parking garage." N.T., 8/10/10, at 6. They went to the second floor to determine "why the screaming was occurring" and saw Appellant and two individuals who were in his company. Officer Paris "stopped those two individuals first, turned them over to Sergeant Herzog, [and] then made contact with [Appellant]," as he was trying to enter the elevator. *Id.* at 7.

When Officer Paris approached him, Appellant "was unsteady on his feet," so the officer asked him "if he had been drinking." *Id.* at 8. Officer Paris was approximately five feet away from Appellant at that time. Appellant responded that he had not been drinking, but he appeared intoxicated to the officer. Officer Paris explained that the basis for this conclusion was Appellant's "appearance, unsteady on his feet, wavering. Talking to him, [he] was a little slow to respond to me[.]" *Id.* Additionally, from "approximately five feet away," Officer Paris detected the odor of what in his "belief was an alcoholic beverage emanating from [Appellant]." *Id.* at 10–11.

---

1. Sergeant Herzog's first name does not appear in the record.

Thus, Officer Paris asked Appellant for identification and to perform field sobriety tests, which Appellant failed. After Appellant refused to take a breathalyzer test, he was arrested since he was underage, in a public place, intoxicated, and disturbing the peace. At the police station, Officer Paris administered a portable breathalyzer test, which was positive for the presence of alcohol.

At the close of the Commonwealth's case, Appellant orally moved to suppress the evidence presented against him on the ground that there was "enough in the record to make argument that there was not reasonable suspicion to make a stop[.]" *Id.* at 26. The trial court rejected that position, convicted Appellant of underage drinking, and sentenced him to fines and costs. This appeal followed. Appellant raises two arguments on appeal:

I. Whether the Trial Court committed an error of law in overruling the Appellant's motion to suppress evidence that was a product of the investigatory stop conducted despite a lack of reasonable suspicion that criminal activity was afoot;

II. Whether the Trial Court committed an error of law in holding that the results of a Portable Breathalyzer Test were admissible in the case[.]

Appellant's brief at 4.

 Prior to addressing Appellant's issues, we must first resolve the Commonwealth's contention that Appellant waived any suppression issue by failing to file a written motion to suppress. It relies upon Pa.R.Crim.P. 581(B), which provides: "Unless the opportunity did not previously exist, or the interests of justice otherwise require, [a motion for suppression of evidence] shall be made only after a case has been returned to court and shall be contained in the omnibus pretrial motion set forth in Rule 578. If timely motion is not made hereunder, the issue of suppression of such evidence shall be deemed to be waived." The Commonwealth posits that since Appellant did not file a written suppression motion after he filed his appeal from the magisterial district justice's determination of guilt, he has waived his right to contest the constitutionality of his interdiction with Officer Paris.

In *Commonwealth v. Long,* 753 A.2d 272 (Pa.Super.2000), we interpreted the predecessor to this Rule, Pa.R.Crim.P. 323, which contained identical terms. Therein, the defendant made an oral motion to suppress evidence during the course of trial. We concluded that despite the fact that a written motion was not filed and that the legal grounds for such a motion would have been apparent from the record, the defendant had not waived his right to move to suppress evidence obtained from a traffic stop. We noted that the rule expressly indicates that a written motion was not required if the opportunity to file it did not previously exist or if the interests of justice otherwise required consideration of the motion. We indicated: "Whether the opportunity did not previously exist or the interests of justice otherwise require is a matter for the discretion of the trial judge." *Id.* at 279.

Herein, the trial court entertained Appellant's oral motion to suppress and rendered a ruling on the merits. Furthermore, the Commonwealth never objected at the summary trial to the trial court's consideration of the oral suppression request. It is only now, on appeal, that the Commonwealth urges a finding of waiver. Finally, this matter involved a summary conviction, the adjudication of which entails truncated procedures. Hence, we decline to find waiver herein.

 Next, we consider Appellant's position that the trial court erred in failing

to suppress the results of his interdiction with Officer Paris.

The standard and scope of review for a challenge to the denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the rulings of a suppression court, this Court considers only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. When the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Johnson,* 33 A.3d 122, 124 (Pa.Super.2011). (citation and quotation marked omitted).

 There are three types of interactions between police and a citizen:

Fourth Amendment jurisprudence has led to the development of three categories of interactions between citizens and the police. The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Au,* 986 A.2d 864, 866–67 (Pa.Super.2009) (*en banc*), *appeal granted on different grounds,* 606 Pa. 113, 995 A.2d 349 (2010).

 The issue of whether a detention has occurred is analyzed under the following standard:

To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

*Commonwealth v. Coleman,* 19 A.3d 1111, 1116 (Pa.Super.2011).

 Herein, we conclude that Appellant had a mere encounter with Officer Paris when Officer Paris was standing five feet away from him. Contrary to Appellant's representations on appeal, the record does not support a finding that his path was blocked by two uniformed police officers and that a seizure occurred at that point. Officer Paris's uncontradicted testimony was that two individuals were detained by his companion, and he alone approached Appellant and then stopped when he was five feet away to ask Appellant some questions. There is no indication that the officer blocked Appellant or restricted his movement. Hence, at that juncture the interdiction was a mere encounter, for which no reasonable suspicion was needed. *See Commonwealth v. Moore,* 11 A.3d 538, 541 (Pa.Super.2010) (mere encounter occurred when police approached defendant and began to speak with him).

From five feet away, Officer Paris detected the odor of alcohol emanating from Appellant, who also appeared unsteady on his feet and was slow to answer questions. Thus, Officer Paris, who had extensive experience in underage drinking, began an investigatory detention by conducting field sobriety tests. Therefore, seizure was supported by reasonable suspicion. As we have noted:

> Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to specific and articulable facts leading him to suspect criminal activity is afoot. In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

*Commonwealth v. Brown*, 606 Pa. 198, 996 A.2d 473, 477 (2010) (citations and quotation marks omitted).

In this case, Appellant was screaming from the second floor of a garage and, when he viewed police, started to walk toward the elevator while his companions approached the police. Appellant smelled of alcohol and was unsteady on his feet. Armed with those facts and his prior experience in underage drinking, Officer Paris had reasonable suspicion that Appellant was committing the noted infraction. We therefore conclude that the trial court did not abuse it discretion in denying Appellant's motion to suppress the evidence.

Appellant next claims that the court erred in admitting the results of the portable breathalyzer test into evidence.[2] However, the Commonwealth avers that Appellant waived this allegation of error by failing to object at the *de novo* trial to the admission of that evidence. We agree with this position. Our review of the transcript establishes that Appellant never raised any objection to Officer Paris's testimony that the results of Appellant's portable breathalyzer test were positive for the presence of alcohol. Hence, he has waived the present contention for purposes of appeal. *Commonwealth v. Baumhammers*, 599 Pa. 1, 960 A.2d 59, 73 (2008).

Judgment of sentence affirmed.

---

2. In *Commonwealth v. Brigidi*, 607 Pa. 329, 6 A.3d 995 (2010), our Supreme Court ruled that the results of a preliminary, portable breath tester, such as the one used herein, are inadmissible in a prosecution under the Crimes Code. Defendant therein was convicted of underage drinking, and the sole evidence of alcohol consumption submitted by the Commonwealth was the results of a pre-arrest breath test. While that decision would warrant the award of a new trial herein, for the reasons set forth in the text, Appellant cannot avail himself of the benefit of *Brigidi*.