J-S63008-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SHAHEED COLEMAN, | |
| Appellant | No. 377 MDA 2014 |

Appeal from the Judgment of Sentence January 24, 2014
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0003784-2012

BEFORE:  BOWES, PANELLA, and PLATT,[*] JJ.

MEMORANDUM BY BOWES, J.:                       **FILED OCTOBER 15, 2014**

Shaheed Coleman appeals from the judgment of sentence of five to ten years incarceration imposed by the trial court after it found him guilty of possession with intent to deliver ("PWID") heroin and possession of a controlled substance.  We affirm.

On August 26, 2012, Officer Robert Collins of the Wilkes-Barre police department observed Appellant seated in the driver's side of a parked vehicle with another individual leaning into the passenger side of the car with the car door open.  The location is known as a high crime and drug area.  Officer Collins exited his own car and approached the vehicle. Officer Collins asked Appellant, "What's happening?" N.T., 7/11/13, at 6.

---

[*]  Retired Senior Judge assigned to the Superior Court.

Appellant responded that he was talking with his friend, the passenger. Officer Collins asked Appellant where his friend lived and Appellant replied that his friend lived on South Welles Street, Wilkes-Barre. The passenger, however, now seated in the passenger side of the car with the door open, informed Officer Collins that he resided in Plymouth, Pennsylvania. Officer Collins noticed that both men appeared nervous and that a large bulge was evident in the passenger's right front pants pocket. In addition, Officer Collins saw the passenger reaching in the area of the bulge. Accordingly, Officer Collins asked the passenger to stop moving.

Officer Collins then inquired with both men if there was anything illegal in the car. Neither man responded. Thereafter, Officer Collins asked the passenger to exit the car and subjected him to a pat-down search. Upon doing so, Officer Collins immediately felt the presence of a gun. He then recovered a loaded 9 mm pistol. In addition, Officer Collins seized a package of suspected heroin.

Based on these findings, Officer Collins placed the passenger under arrest. As he did so, Officer David Morris arrived on the scene. Officer Morris witnessed Appellant making furtive movements inside the vehicle by reaching for his waist and making additional movements consistent with concealing an item. As a result, Officer Morris asked Appellant to alight from the car. Officer Morris next performed a pat-down search of Appellant. In patting down Appellant, Officer Morris felt an item that appeared to be a handgun. However, the item was seven bricks of

heroin bundled in an L-shape. Accordingly, the officer placed Appellant under arrest. Police recovered three cell phones from the car, and also seized $1,080 from Appellant's front left pants pocket and $400 from his wallet.

Appellant filed a motion to suppress the evidence. After the conclusion of a suppression hearing, the suppression court found that the interaction between the officers and Appellant began as a mere encounter. It then ruled that this ripened into an investigative detention based on reasonable suspicion. The court held that the pat-down search of Appellant was lawful and suppression was unwarranted.

Appellant proceeded to a non-jury trial. The court adjudicated Appellant guilty of the aforementioned offenses. Thereafter, the court sentenced Appellant to five to ten years incarceration. Appellant timely appealed. The court directed Appellant to file and serve a concise statement of errors complained of on appeal. Appellant complied, and the trial court penned its opinion. The matter is now ready for this Court's review. Appellant presents one issue for our consideration.

> I.  Whether the finder of fact erred in determining that at the initiation of Appellant's detention Appellee had specific, individualized facts constituting reasonable suspicion or probable cause, under the Fourth Amendment of the United States Constitution and Article I[,] § 8 of the Pennsylvania Constitution, to stop and detain Appellant or believe that he was engaged in criminal activity.

Appellant's brief at 4.

In evaluating a suppression ruling, we consider the evidence of the Commonwealth, as the prevailing party below, and any evidence of the defendant that is uncontradicted when examined in the context of the suppression record. *Commonwealth v. Sanders*, 42 A.3d 325, 330 (Pa.Super. 2012). This Court is bound by the factual findings of the suppression court where the record supports those findings and may only reverse when the legal conclusions drawn from those facts are in error. *Id*.

Appellant argues that Officer Collins' "actions constituted a 'seizure' and not a mere encounter." Appellant's brief at 9. He maintains that Officer Collins' question, "What's happening?" followed by additional questions was an investigative detention. In his view, "no reasonable person would have felt free to terminate the encounter with Officer Collins and depart the scene." *Id*. Appellant continues that Officer Collins lacked reasonable suspicion to conduct an investigative detention and that he "offered no particularized objective basis for believing that either of the men were engaged in any criminal activity." *Id*. at 11.

The Commonwealth responds that Officer Collins' initial approach and question to Appellant was a mere encounter. It maintains that once Appellant's friend was arrested, he could be frisked as the arrestee's companion since Appellant made furtive movements "as if he was concealing something in his waist band[.]" Commonwealth's brief at 8.

In evaluating interaction between law enforcement and other citizens, Pennsylvania courts look to whether the interaction is a mere encounter, an investigatory detention, or a custodial detention, *i.e.*, an arrest. The latter is not in question herein. A mere encounter does not require police to have any level of suspicion that the person is engaged in wrongdoing. *Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa.Super. 2012). At the same time, such an encounter does not carry any official compulsion for the party to stop or respond. *Id*. An investigative detention, however, subjects an individual to a stop and short period of detention. *Id*. This seizure does not involve actions that are so coercive as to comprise the equivalent of an arrest. *Id*. To conduct an investigative detention, police must have reasonable suspicion of criminal activity. *Id*. We determine what level of interaction occurred under a totality of the circumstances test. *Commonwealth v. Williams*, 73 A.3d 609, 615-616 (Pa.Super. 2013).

We agree with the Commonwealth that Officer Collins' initial approach of Appellant was a mere encounter. Officer Collins was originally alone, did not display his weapon, or make any show of force. He neither used his car to prevent Appellant from leaving, nor activated his lights or siren. Rather, he simply approached and asked a question. Appellant's reliance on *Commonwealth v. Dales*, 830 A.2d 807 (Pa.Super. 2003), for the proposition that Officer Collins' continued questions resulted in an investigative detention is unpersuasive. *Dales* is wholly dissimilar factually.

It involved a vehicle stop with multiple police officers. The reason for the initial stop, tinted windows, had concluded. However, the officer continued to question the defendant therein.

Appellant's contention that this case is analogous to *Commonwealth v. Jones*, 378 A.2d 835 (Pa. 1977), and *Commonwealth v. DeWitt*, 608 A.2d 1030 (Pa. 1992), is equally unavailing. *Jones* involved an unusual set of circumstances. Initially, police responded to a call regarding Jones' alleged discovery of his deceased aunt. The next day police traveled to Jones' residence to conduct additional questioning; however, Jones had fled the area. Police issued an arrest warrant after discovering a stolen firearm that same day. Two days later, Jones was picked up in Missouri by Missouri highway police. Specifically, the officer stopped his police car and asked Jones for identification. After Jones provided the identification, the officer directed him to be seated in the back of the officer's car. He then conducted a check and discovered the outstanding arrest warrant. The officer then asked Jones to exit the vehicle at which point Jones admitted to having a gun.

The suppression court suppressed the gun from the stop and additional statements Jones made to the officer. The Commonwealth appealed, and the Supreme Court affirmed. In doing so, it found that the officer's placement of Jones in the backseat of the police car after asking for identification subjected Jones to a stop that was not supported by

reasonable suspicion. Here, Officer Collins did not direct Appellant's movement or sit him in his police car. **Jones** is inapposite.

In **DeWitt**, Pennsylvania State Police witnessed a car parked partially in a parking lot of a church and partly on the berm of a road. The car was facing in the opposite direction of travel and did not have its exterior lights illuminated. The interior lights of the car were on, and police had been notified by the church on prior occasions to check for suspicious vehicles. The state police officers pulled their vehicle alongside the vehicle, which then began to pull away. Those inside the car also turned off the interior lights. The officers stopped the car. Inside the car, in plain view, the troopers saw beer, cocaine, and a marijuana cigarette. The **DeWitt** Court held that the initial vehicle stop was illegal.

Unlike **DeWitt**, Officer Collins did not stop Appellant's vehicle as he attempted to leave since Appellant never sought to leave. Officer Collins' walking up to the car without turning on his siren or overhead lights and asking Appellant what was happening was not an investigative detention. Appellant's investigative detention did not arise until after his companion was arrested. **DeWitt** is not controlling.

Having determined that Officer Collins' initial interaction with Appellant was not an investigative detention, we now analyze whether the subsequent events led to reasonable suspicion to justify the later **Terry** frisk. A **Terry** frisk is permissible of an arrestee's companion where there is reasonable

suspicion that the companion is armed and dangerous.  ***Commonwealth v. Jackson***, 907 A.2d 540, 545 (Pa.Super. 2006).  Instantly, Appellant and his companion were in a high crime area.  Appellant's friend was found with a loaded 9 mm handgun.  Appellant made furtive movements consistent with concealing something as Officer Morris approached, and acted nervously throughout his encounter with Officer Collins.  Appellant and his companion gave inconsistent responses as to where Appellant's friend lived.  In light of these circumstances, we find that the suppression court did not err in concluding that the totality of the circumstances supported the ***Terry*** frisk.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/15/2014