**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                  :            PENNSYLVANIA
                                  :
            v.                      :
                                  :
                                  :
MARK LEROY WILDASIN, JR.,       :
                                  :
           Appellant        :        No. 1750 MDA 2017

Appeal from the Judgment of Sentence October 16, 2017
in the Court of Common Pleas of Adams County,
Criminal Division at No(s):  CP-01-CR-0001306-2016

BEFORE:  OLSON, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:            **FILED JULY 23, 2018**

Mark Leroy Wildasin, Jr. ("Wildasin"), appeals from the judgment of sentence imposed following his convictions of three counts of driving under the influence ("DUI"), and one count each of endangering welfare of children, careless driving, and restrictions on alcoholic beverages.[1]  We affirm.

On August 3, 2016, Wildasin drove to McDonald's, with his one-year-old daughter as a passenger, where a drive-through employee noticed an open beer can between Wildasin's legs and called police.  N.T., 2/13/17, at 6.  The witness provided police with Wildasin's license plate number, a physical description of Wildasin and his vehicle, and the direction in which he was headed upon leaving McDonald's.  *Id.* at 7.  Police dispatch sent out a notice

---

[1]  ***See*** 75 Pa.C.S.A. §§ 3802(a)(1), 3802(c), 3802(b); 18 Pa.C.S.A. § 4304(a)(1); 75 Pa.C.S.A. §§ 3714(a), 3809(a).

over the radio with the information provided by the witness and Wildasin's home address. *Id.* at 6-7.

Officer Darren David ("Officer David"), of the Pennsylvania Game and Wildlife Commission, was the first officer to make contact with Wildasin at his home. N.T., 8/17/17, at ¶ 4, Exhibit 5 (Stipulations). At the home, Officer David observed an SUV matching the description by the eyewitness, and bearing the same license plate number, and Wildasin, who was standing in his driveway next to the vehicle. *Id.* Officer David observed Wildasin exhibit signs of intoxication, including an odor of alcohol, slurred speech, glassy eyes, and difficulty with balance. *Id.* at ¶ 5. When asked, Wildasin admitted to consuming alcohol. *Id.* Shortly thereafter, Reading Township Officer Greg Morehead ("Officer Morehead") arrived and also observed Wildasin exhibit an odor of alcohol, difficulty with balance, slurred speech, and glassy eyes. *Id.* at ¶ 6. When asked by Officer Morehead, Wildasin again admitted to consuming alcohol. *Id.* Wildasin advised the two officers that there was an open beer in his vehicle, and two unopened beers in a cooler in the vehicle. *Id.* at ¶ 7. He also commented to the officers that he was "fucked … because he was drinking." *Id.*

Less than fifteen minutes following the radio dispatch, Pennsylvania State Trooper Maeve A. Hoffman ("Trooper Hoffman") arrived and assumed control of the investigation. N.T., 2/13/17, at 8-10, 13. Trooper Hoffman observed that Wildasin was emanating an odor of alcohol and had slurred speech, and that Wildasin's eyes were glassy and bloodshot. *Id.* at 8-10.

Wildasin admitted to Trooper Hoffman that he had consumed two beers prior to driving to McDonald's, and Trooper Hoffman observed in plain sight an open beer can sitting on the front driver-side floor of Wildasin's vehicle. *Id.* at 10-12. Trooper Hoffman conducted standardized field sobriety tests and a preliminary breath test ("PBT"). *Id.* at 12-13. As a result of her observations and a positive reading from the PBT, Trooper Hoffman placed Wildasin under arrest. *Id.* at 13. Wildasin was taken to a local hospital where his blood was drawn[2] and subsequently sent to the Pennsylvania State Police lab for analysis. N.T., 8/17/17, at ¶ 10, Exhibit 5. Wildasin's sample returned a blood alcohol concentration of 0.167%. *Id.* at ¶ 11. Wildasin was subsequently charged with the above-described offenses.

Wildasin filed a Motion to suppress evidence, arguing, in relevant part, that (1) he was subjected to a custodial detention without probable cause; and (2) alternatively, he was subjected to an investigative detention without reasonable suspicion; both in violation of the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. Following a hearing and submission of briefs, the trial court denied Wildasin's Motion. The trial court determined that Trooper Hoffman possessed

---

[2] Trooper Hoffman testified that prior to Wildasin's blood test, she advised him of his rights by using a modified DL-26 form, which omits any threat of criminal penalties for failure to submit to a blood draw. *See* N.T., 2/13/17, at 14-15; *id.* at Exhibit 1. Therefore, no *Birchfield* issue is present. *See Commonwealth v. Smith*, 177 A.3d 915, 922 (Pa. Super. 2017) (stating that *Birchfield* is inapplicable where the defendant is not advised of criminal penalties for refusing to consent to a blood draw) (citing *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016)).

reasonable suspicion to subject Wildasin to an investigative detention based on the tip provided by the named witness and Trooper Hoffman's corroboration of the identifying factors regarding Wildasin's vehicle.

Following a stipulated bench trial, Wildasin was convicted of the above-described offenses and sentenced to serve sixty months of intermediate punishment, followed by thirty-six months of probation, and ordered to pay fines, totaling $1,150.00. Wildasin filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

On appeal, Wildasin raises the following questions for our review:

I. Was the detention of [Wildasin] in violation of the Fourth Amendment and Article 1 Section 8 of the Pennsylvania Constitution?

II. Was the evidence presented to the trial court insufficient to support a conviction for restriction on alcoholic beverages under section 3809(a) of the Pennsylvania Motor Vehicle Code?

III. Was the evidence presented to the trial court insufficient to support a conviction for carelss [*sic*] driving under section 3714(a) of the Pennsylvania Motor Vehicle Code?

Brief for Appellant at 5 (capitalization omitted).

In his first claim, Wildasin challenges the trial court's Order denying his Motion to suppress. *See id.* at 9-18. Wildasin alleges that his rights under the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, were violated when police subjected him to an investigatory detention without the requisite level of suspicion to detain

- 4 -

him, and as a result, any evidence obtained following the detention should have been suppressed. *See id.* at 10-14, 21. He argues that Officer David and Officer Morehead detained him without reasonable suspicion of him having engaged in criminal activity. *See id.* at 10-13. Wildasin further alleges that Trooper Hoffman lacked reasonable suspicion to detain Wildasin when she arrived at the scene. *See id.* at 13-14. Wildasin argues that the tip from the McDonald's employee made no mention of his condition or the quality of his driving. *See id.* at 14. Therefore, according to Wildasin, the police had no information to conclude that criminal activity was occurring. *See id.*

Wildasin alleges, in the alternative, that the officers required probable cause to detain him, because the charge they were investigating, restrictions on alcoholic beverages, was not "investigable." *See id.* at 14-18. He argues that the police were responding to an "open container" violation pursuant to 75 Pa.C.S.A. § 3809(a). *See id.* at 14-16. Wildasin states that because when he was detained, he was no longer operating his vehicle, and his vehicle was not located on a Pennsylvania highway, no evidence to charge him under section 3809 could have been discovered. *See id.* at 17. He argues that because the police did not have probable cause, their detention of him was

illegal and any evidence obtained as a result must be suppressed. *See id.* at 17-18, 21.[3]

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing such a ruling by the suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

*Evans*, 153 A.3d at 327 (citations, quotation marks, ellipses, and brackets omitted).

"The Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures." *Commonwealth v. Walls*, 53 A.3d 889, 892 (Pa. Super. 2012). There are three categories of interactions between police and a citizen:

> The first of these is a "mere encounter" (or request for information)[,] which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond.

---

[3] While Wildasin argues that analysis of the stop must begin with the inquiries by Officers David and Morehead, no testimony regarding their interaction with Wildasin was provided at the suppression hearing. Thus, we address Wildasin's claims with Trooper Hoffman's testimony. *See Commonwealth v. Evans*, 153 A.3d 323, 327 (Pa. Super. 2016) (noting this Court is "limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.") (citation omitted).

> The second, an "investigative detention[,]" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Downey***, 39 A.3d 401, 405 (Pa. Super. 2012) (citation omitted).

Upon review, Trooper Hoffman testified that a named informant provided information that Wildasin was driving with an open can of beer between his legs, and further gave Wildasin's license plate number, the color and a description of his vehicle, a description of his physical features, and the direction that his vehicle was heading. **See** N.T., 2/13/17, at 6-7. Trooper Hoffman stated that, less than fifteen minutes later, she found the described vehicle in the driveway of Wildasin's residence and corroborated the details given by the witness. **See id.** at 8-9, 13. She identified Wildasin, who was standing next to his vehicle and was exhibiting signs of intoxication, including slurred speech, glassy and bloodshot eyes, and an odor of alcohol. **See id.** at 8-10. Trooper Hoffman testified that when she arrived, Officer David and Officer Morehead were already at Wildasin's home, each with their own police vehicles. **See id.**, at 8-10, 17-18. Trooper Hoffman stated that Wildasin was not placed in handcuffs or otherwise detained, and none of the officers were brandishing a weapon. **See id.** at 9-10. Trooper Hoffman advised Wildasin that she was investigating an open container violation and engaged in

questioning targeted at determining whether Wildasin had engaged in criminal activity. *See id.* at 10-11.

These circumstances would suggest that Wildasin was not subjected to such coercive conditions as to constitute the functional equivalent of an arrest. Therefore, Trooper Hoffman's inquiry constitutes an investigative detention. *Compare Commonwealth v. Martin*, 705 A.2d 887, 891 (Pa. Super. 1997) (finding an investigative detention where three uniformed officers approached the defendant, advised him that he was suspected of illegal activity, and subjected him to questioning), *with Commonwealth v. Hannon*, 837 A.2d 551, 554 (Pa. Super. 2003) (finding an arrest where the defendant was "ordered out of the car at gunpoint and restrained with handcuffs."). Therefore, in order for Trooper Hoffman's initial detention to be constitutional, she needed to have reasonable suspicion that criminal activity was afoot.[4] *See Martin*, 705 A.2d at 892.

---

[4] We are not convinced by Wildasin's argument that the police officers required probable cause to detain him because the criminal offense they were investigating, restrictions on alcoholic beverages, was not "investigatable." *See* Brief for Appellant at 14-18. To the contrary, upon further investigation of Wildasin's vehicle, the police could have reasonably expected to find the open beer can witnessed by the McDonald's employee. Unlike other traffic infractions that have been found not investigatable, such as failure to maintain a single lane, *see Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa. Super. 2010), or failure to yield to an emergency vehicle, *see Commonwealth v. Busser*, 56 A.3d 419, 420 (Pa. Super. 2012), an open container violation requires additional physical evidence, *i.e.*, the "open container," which may be discovered after the vehicle is stopped.

Here, the tip from the named witness, combined with Trooper Hoffman's corroboration of the description of Wildasin's vehicle and her observation that Wildasin was exhibiting signs of intoxication, provided reasonable suspicion for Trooper Hoffman to conduct an investigative detention. ***See Commonwealth v. Barber***, 889 A.2d 587, 594-96 (Pa. Super. 2005) (stating that police had reasonable suspicion where they received a tip from an identified source stating that a man was drinking a beer while driving a van in a parking lot, and giving a description of the man, his vehicle, the license plate number, and the vehicle's location, and police corroborated the tip by responding to the location and identifying a vehicle and a man matching the description given by the source). Accordingly, Trooper Hoffman's investigatory detention of Wildasin was constitutional.

We will address Wildasin's sufficiency of the evidence claims together. Wildasin challenges the sufficiency of the evidence for his convictions of restriction on alcoholic beverages and careless driving under sections 3809(a) and 3714(a), respectively, of the Pennsylvania Motor Vehicle Code. ***See*** Brief for Appellant at 18-20. Wildasin alleges that the Commonwealth failed to prove two elements of 3809(a): that Wildasin (1) possessed an open alcohol container, (2) while driving on a highway. ***Id.*** at 19-20. Under section 3714(a), careless driving, Wildasin alleges that the Commonwealth failed to prove that he drove his vehicle "in careless disregard for the safety of persons or property." ***Id.*** at 18-19.

- 9 -

We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

> [W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, or part or none of the evidence.

***Commonwealth v. Melvin***, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

75 Pa.C.S.A. § 3809(a), in relevant part, states, "an individual who is an operator … in a motor vehicle may not be in possession of an open alcoholic beverage container or consume … an alcoholic beverage in a motor vehicle while the motor vehicle is located on a highway in this Commonwealth." 75 Pa.C.S.A. § 3809(a). Therefore, the Commonwealth was required to prove that Wildasin (1) operated a vehicle, (2) on a Pennsylvania highway, (3) while in possession of or consuming an alcoholic beverage. ***See id.*** Highway is defined as

[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel. The term includes a roadway open to the use of the public for vehicular travel on grounds of a college or university or public or private school or public or historical park.

*Id.* § 102.

The evidence, viewed in a light most favorable to the Commonwealth, establishes that the McDonald's employee witnessed Wildasin in possession of an open alcoholic beverage while driving, immediately prior to entering a Pennsylvania highway. *See* N.T., 8/17/17, at ¶ 3, Exhibit 5. Less than fifteen minutes later, Trooper Hoffman found an open alcoholic beverage container within Wildasin's vehicle, *see* N.T., 2/13/17, at 11, and Wildasin admitted that he had just returned from driving to McDonalds, *see* N.T., 8/17/17, at ¶ 5, Exhibit 5. Therefore, the evidence is sufficient to establish that Wildasin operated his vehicle on a Pennsylvania highway while in possession of an open alcoholic beverage. *See Melvin*, 103 A.3d at 39-40 (stating that "[t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.").

In order to sustain a conviction under 75 Pa.C.S.A. § 3714(a), the Commonwealth must prove that the defendant drove "a vehicle in careless disregard for the safety of persons or property." *See id.*

Here, the evidence, viewed in a light most favorable to the Commonwealth, establishes that Wildasin drove, with a young child in the vehicle, while consuming an alcoholic beverage. Therefore, the evidence is

sufficient to sustain Wildasin's conviction of 75 Pa.C.S.A. § 3714(a).  ***See***

***Melvin***, ***supra***.

Judgment of sentence affirmed.

Judge Kunselman joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/23/2018